## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

|  |  |  |
|---|---|---|
| CYRIL B. KORTE, | ) | |
| | ) | |
| Plaintiff, | ) | No.  12-791-MJR-DGW |
| | ) | |
| v. | ) | |
| | ) | Honorable _____ |
| HUNTER'S MANUFACTURING | ) | |
| COMPANY, INC. d/b/a TENPOINT | ) | |
| CROSSBOW TECHNOLOGIES and | ) | |
| CABELA'S RETAIL MO, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### NOTICE OF REMOVAL

For the Notice of Removal of this action from the Circuit Court for the Third Judicial Circuit, Madison County, Illinois to the United States District Court for the Southern District of Illinois, Defendant Cabela's Retail MO, LLC, ("Cabela's), states as follows:

1.      On or about May 25, 2012, Cyril B. Korte filed a Complaint in the Third Judicial Circuit in and for Madison County, Illinois, Case No. 12-L-739.  Cabela's Retail MO, LLC was served with a summons and a copy of the complaint on July 13, 2012.  Copies of Plaintiff's process and pleadings filed in said action are attached hereto as Exhibit A in accordance with 28 U.S.C. § 1446(a)

2.      According to the Complaint, Plaintiff is now and was at all times relevant hereto, including at the time of filing this Notice of Removal and at the commencement of Case No. 12-L-739, a citizen of Illinois residing in Madison County.

3.      Cabela's Retail MO, LLC is now and was at all times relevant hereto, including at the time of filing this Notice of Removal and at the commencement of Case No. 12-L-739, a Nebraska Corporation with its principal place of business in Nebraska.

4.      Hunter's Manufacturing Company, Inc. d/b/a TenPoint Crossbow Technologies ("TenPoint"), is now and was at all times relevant hereto, including at the time of filing this Notice of Removal and at the commencement of Case No. 12-L-739, a Nevada Corporation with its principal place of business in Ohio.

5.      Upon information and belief, TenPoint has not yet been served with a copy of the Summons or Complaint in this matter.

6.      Pursuant to controlling law, counsel for Cabela's has discussed Removal of this action with counsel for TenPoint. TenPoint has provided express consent to remove this matter to this Court. Accordingly, TenPoint joins in this removal.

7.      This action is one over which this Court has original jurisdiction pursuant to the provisions of 28 U.S.C. § 1332(a)(1) and is one that Cabela's may remove to this Court pursuant to 28 U.S.C. § 1441(a) as this is an action between citizens of different State.

8.      The amount in controversy is in excess of $75,000 in compensatory damages exclusive of interest and costs. Specifically, Plaintiff alleges in his complaint that he suffered severe and permanent injuries when the product at issue "violently struck plaintiff's left thumb and completely amputated the distal section of plaintiff's thumb." (Complaint at ¶ 13.) Plaintiff claims that his alleged injury resulted "in sever and permanent injury to his left thumb, physical impairment and disfigurement, physical pain and suffering, mental pain and suffering,

impairment of his enjoyment of life, and [that he has] incurred and will continue to incur various sums of money for past, present and future medical expenses associated with monitoring and treating his injuries." (Complaint at ¶40.)  Plaintiff further seeks injunctive relief ordering that TenPoint provide a guard grip free of charge to all Illinois consumers of the product at issue, and further injunctive relief.  (Complaint, Count II)

9.     This Notice of Removal is filed within thirty (30) days after receipt by Cabela's of service of process of the Summons and Complaint in this matter, and prior to one year after the commencement of the action as required by 28 U.S.C. §1446(b).

10.     A copy of this Notice of Removal has been filed with the Clerk for the Third Judicial Circuit, Madison County, Illinois, and served upon other counsel of record.

Dated: July 11, 2012                               Respectfully submitted,


                                                   s/ Caroline C. Plater
                                                   One of the Attorneys for Defendant,
                                                   Cabela's Retail MO, LLC

                                                   Caroline C. Plater (#6256076)
                                                   K&L Gates LLP
                                                   70 W. Madison Street, Suite 3100
                                                   Chicago, IL 60602
                                                   (312) 807-4253
                                                   (312) 827-8026 (fax)
                                                   caroline.plater@klgates.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of July, 2012, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Jeffrey S. Hebrank, #06182800
W. Jason Rankin, #06237927
Jason D. Johnson, #6286499
HEPLERBROOM LLC
130 N. Main St.
Edwardsville, Illinois 62025
Phone: (618) 656-0184
Fax: (618) 656-1364

*Counsel for Plaintiff*

s/Caroline C. Plater
Caroline C. Plater

# EXHIBIT A

May 29, 2012

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE THIRD JUDICIAL CIRCUIT
MADISON COUNTY
(618) 296-4464
WWW.CO.MADISON.IL.US

CASE No.  2012 L  000739

DATE:  May 29, 2012

CYRIL B. KORTE

                    PLAINTIFF

VS.

CABELAS RETAIL MO LLC




                    DEFENDANT

DEFENDANT:  CABELAS RETAIL MO LLC c/o National Registered Agents, Inc., 300 B East High St., Jefferson Citym, MO 65101

   You are hereby summoned and required to file an answer in this case, or otherwise file your appearance, in the office of the Madison County Circuit Clerk, within 30 days after service of this summons, exclusive of the day of service.  If you fail to do so, a judgment or decree by default may be taken against you for the relief prayed in the complaint.

   This summons must be returned by the officer or other person to whom it was given for service, with endorsement thereon of service and fees, if any, immediately after service.  If service cannot be made, this summons shall be returned so endorsed.

   This summons may not be served later than 30 days after its date.

   Witness: JUDY NELSON the Clerk of said Circuit Court and the seal thereof, at Edwardsville, Illinois, this May 29, 2012 .



                         JUDY NELSON
                         CLERK OF THE CIRCUIT COURT

                         BY: _____
                              Deputy Clerk

========================================================================

(Plaintiff's attorney or plaintiff if he is not represented by an attorney)
JASON D. JOHNSON(BH)
HELPLERBROOM LLC
130 N MAIN ST PO BOX 510
EDWARDSVILLE    IL 62025


Date of Service:_____, 20_____.
(To be inserted by officer on the copy left with the defendant or other person)



FILED

MAY 2 5 2012

CLERK OF CIRCUIT COURT #7
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

CYRIL B. KORTE,                          )
                                         )
            Plaintiff,                   )
                                         )
vs.                                      )      Case No. 12-L-_____739_____
                                         )
HUNTER'S MANUFACTURING                   )
COMPANY, INC. d/b/a TENPOINT             )      **JURY TRIAL DEMANDED**
CROSSBOW TECHNOLOGIES and                )
CABELA'S RETAIL MO, LLC,                 )
                                         )
            Defendants.                  )

## COMPLAINT

COMES NOW Plaintiff, Cyril B. Korte, by and through his undersigned counsel, and for

his Complaint against Defendants Hunter's Manufacturing Company, Inc. d/b/a Tenpoint

Crossbow Technologies and Cabela's Retail MO, LLC, states as follows:

### Parties and Jurisdiction

1.      Plaintiff is a citizen of Illinois residing in Madison County, Illinois.  The personal

injury at issue in this action occurred in Illinois.

2.      Defendant Hunter's Manufacturing Company, Inc. d/b/a Tenpoint Crossbow

Technologies (hereinafter "Tenpoint") is a Nevada corporation with its principal place of

business in Suffield, Ohio.

3.      Tenpoint is in the business of manufacturing and selling crossbows and crossbow-

related accessories.  Tenpoint sells crossbows and other related merchandise directly to Illinois

residents.  Tenpoint also sells crossbows and other related merchandise to Illinois residents

through dealers located in Illinois.

4.      Defendant Cabela's Retail MO, LLC (hereinafter "Cabela's") is a Nebraska limited liability company.

5.      Cabela's operates a retail store located in Hazelwood, Missouri that specializes in hunting, fishing, camping and related outdoor recreation merchandise.  The crossbow at issue in this action was purchased by plaintiff from Cabela's store in Hazelwood, Missouri.  Because of its proximity to Illinois, Cabela's has many customers such as Plaintiff from Illinois.

### Venue

6.      Tenpoint is not authorized to transact business in the State of Illinois.

7.      Cabela's is not authorized to transact business in the State of Illinois.

8.      Pursuant to 735 ILCS 5/2-102, a foreign corporation not authorized to transact business in this State is a nonresident of this State.  Pursuant to 735 ILCS 5/2-101, if all defendants are nonresidents of the State of Illinois, an action may be commenced in any county in Illinois.

9.      Because Tenpoint and Cabela's are nonresidents of Illinois, this action may be filed in any county in Illinois.  Therefore, venue is proper in Madison County, Illinois.  Venue is also proper in Madison County, Illinois because Plaintiff resides in Madison County and has suffered and continues to suffer damages in Madison County, and therefore, pursuant to 735 ILCS 5/2-101, the transaction or some part thereof has occurred in Madison County.

### General Allegations

10.     In November 2009, plaintiff purchased a Tenpoint Phantom CLS crossbow from Cabela's in Hazelwood, Missouri.

11.     Plaintiff relied on the expertise and representations of Cabela's in selecting and purchasing the Phantom CLS crossbow.

12.     Cabela's represented to Plaintiff that the Phantom CLS crossbow was the best and safest crossbow he could buy for hunting.

13.     On November 12, 2011, while deer hunting, plaintiff fired his Phantom CLS crossbow at a deer.  In the process of firing the crossbow, the bow string from the Phantom CLS crossbow violently struck plaintiff's left thumb and completely amputated the distal section of plaintiff's thumb.  Plaintiff's treating physicians were unable to reattach the amputated portion of plaintiff's thumb.

14.     Plaintiff's Phantom CLS crossbow was unaltered and in its original condition at the time of the incident on November 12, 2011.

15.     When the Phantom CLS crossbow was designed, manufactured and sold, Tenpoint was aware that if a crossbow user's fingers or thumb were placed in the path of a moving bowstring, serious injury could be caused to that user's fingers or thumb.

16.     Prior to the time of the design, manufacture and sale of the Phantom CLS crossbow, Tenpoint had knowledge that certain crossbow users had injured their fingers or thumb by unintentionally placing their fingers or thumb in the path of the moving bowstring while using a crossbow.

17.     In fact, such injuries to users' fingers or thumb are the most common injuries associated with the use of Tenpoint's crossbows and Tenpoint was at all relevant times aware of this fact.

18.     Tenpoint designed a GripSafety, which it installed on certain of its high-end crossbows, including the Phantom CLS crossbow purchased by plaintiff.

19.     A GripSafety is a button located on the side of the crossbow's fore-grip that must be depressed before the crossbow can be fired.  According to the user manual from Tenpoint

included with plaintiff's Phantom CLS crossbow, the GripSafety "requires the shooter to hold the fore-grip properly – and safely – below the surface of the flight rail while shooting the crossbow."

20.    However, the GripSafety does not require the user to hold the fore-grip properly and safely below the surface of the flight rail. For example, the thumb may slide up the GripSafety button and above the surface of the flight rail while continuously depressing the GripSafety button.

21.    Tenpoint's representation that the GripSafety "requires the shooter to hold the fore-grip properly – and safely – below the surface of the flight rail while shooting the crossbow" is false.

22.    Tenpoint knew at the time that plaintiff purchased his Phantom CLS crossbow that the above representation regarding the GripSafety was false. On information and belief, by that time, Tenpoint had received one or more notices from users claiming to have injured their fingers and/or thumb on the bowstring of a crossbow with a GripSafety installed.

23.    Prior to the time of the design, manufacture and sale of the Phantom CLS crossbow, Tenpoint designed a crossbow grip guard, which was intended by Tenpoint to alleviate the danger of crossbow users injuring their fingers and thumb by unintentionally placing their fingers or thumb in the path of the moving bowstring. The grip guard is a physical barrier positioned between the surface of the crossbow's flight deck and the user's fingers or thumb of his front hand.

24.    Tenpoint submitted a provisional patent application for a crossbow grip guard to the United States Patent Office on July 20, 2005. A full application for the crossbow grip guard

was submitted a year later, and a patent was awarded to Tenpoint for the crossbow grip guard on February 16, 2010.

25.     As shown by Tenpoint's patent application for the crossbow grip guard, the grip guard was designed to work in conjunction with the GripSafety.  Tenpoint's design of the grip guard to be used in conjunction with the GripSafety demonstrates that Tenpoint knew the GripSafety alone would not prevent a crossbow user's fingers or thumb from migrating above the surface of the flight deck of the crossbow.

26.     Prior to the time plaintiff purchased his Phantom CLS crossbow, Tenpoint had received notice that users of Tenpoint crossbows (that included a GripSafety, but not a grip guard) had injured their thumb and/or fingers after being struck by the bowstring of said Tenpoint crossbows.

27.     Inclusion of the GripSafety without a corresponding grip guard on the Phantom CLS crossbow rendered the crossbow more dangerous than if the GripSafety had not been included at all.  The inclusion of the GripSafety on the crossbow, along with the misleading representations from Tenpoint regarding the efficacy of the GripSafety, lulled users into a false sense of security that the GripSafety would require their front hand to be in a safe position.

28.     The location of the GripSafety button on the Phantom CLS crossbow less than two inches from the surface of the flight deck of the crossbow required users to place their thumb dangerously close to the surface of the flight deck where even the slightest upward movement of their thumb could result in catastrophic injury; movement which is a virtual certainty by the very nature of using the bow to hunt.

29.     Moreover, the GripSafety button forces users to adjust the position of their thumb right before they are ready to shoot the crossbow, increasing the likelihood that the thumb is placed in a dangerous position above the surface of the flight deck of the crossbow.

30.     Despite having designed the crossbow grip guard by July 20, 2005, at the latest, Tenpoint did not include a crossbow grip guard on the Phantom CLS crossbow sold to plaintiff.

31.     In 2011, Tenpoint finally released a grip guard for sale at a sale price of $19.99. The grip guard was sold and is currently sold directly by Tenpoint from its website.  Tenpoint states on its website that the grip guard can easily be attached to all post-1999 Tenpoint crossbows with or without a GripSafety

32.     Additionally, in 2011, Tenpoint began including grip guards with the new crossbows it sold.

33.     Tenpoint did not notify plaintiff about the availability of the grip guard prior to his injury, nor did Tenpoint attempt to notify plaintiff about the availability of the grip guard or the necessity of using a grip guard on the Phantom CLS crossbow to safely use that crossbow.

34.     If the Phantom CLS crossbow had been properly designed, plaintiff would not have been injured by his crossbow.


**Count I**
**(Directed Against Tenpoint)**
**(Strict Products Liability – Design Defect)**

35.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

36.     This Count is brought against Defendant Tenpoint only.

37.     During all relevant times hereto, Tenpoint was engaged in the manufacture, sale and distribution of Phantom CLS crossbows.

38.     As described above, the design of the Phantom CLS crossbow that included a GripSafety without a grip guard made the crossbow unreasonably dangerous.

39.     Said defective design existed at the time the Phantom CLS crossbow left Tenpoint's control.

40.     As a direct and proximate cause of the defective design of the Phantom CLS crossbow, plaintiff injured his left thumb as more specifically described above, resulting in severe and permanent injury to his left thumb, physical impairment and disfigurement, physical pain and suffering, mental pain and suffering, impairment of his enjoyment of life, and incurred and will continue to incur various sums of money for past, present and future medical expenses associated with monitoring and treating his injuries.

WHEREFORE, plaintiff prays that the Court enter judgment in his favor and against Tenpoint in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus costs of suit.

### Count II
### (Directed Against Tenpoint)
### (Illinois Consumer Fraud Act)

41.     Plaintiff realleges and reasserts each and every allegation contained in paragraphs 1 – 34 of this Complaint as if fully set forth herein.

42.     This Count is brought against Defendant Tenpoint only.

43.     Tenpoint's conduct was unfair and deceptive and constituted an improper concealment, suppression, misrepresentation or omission of a material fact in violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2.

44.     Tenpoint violated the Illinois Consumer Fraud Act's prohibition against misrepresentation of a material fact during commercial transactions because of conduct including but not limited to:

a.      Tenpoint's misrepresentation that the GripSafety "requires the shooter to hold the fore-grip properly – and safely – below the surface of the flight rail while shooting the crossbow" when, in fact, the GripSafety does not require the shooter to hold the foregrip properly and safely below the surface of the flight rail while shooting the crossbow.

b.      Tenpoint's misrepresentation that the GripSafety increases the safety of using the crossbow.

45.     Tenpoint violated the Illinois Consumer Fraud Act's prohibition against omitting material information during commercial transactions because of conduct including but not limited to:

a.      Tenpoint's concealment of material facts regarding the poor and dangerous design of the Phantom CLS crossbow.

b.      Tenpoint's concealment of the material fact that a user may still injure their fingers or thumb while using the Phantom CLS crossbow despite the inclusion of the GripSafety on the crossbow.

46.     Tenpoint violated the Illinois Consumer Fraud Act's prohibition against unfair practices because of conduct including but not limited to:

a.      Tenpoint's practice of placing a product that it knew to have a dangerous defect into the stream of commerce with the intent that consumers would purchase it and use it;

b.      Tenpoint's practice of concealing from consumers that Tenpoint had full knowledge of the defective nature of the Phantom CLS crossbows and yet continued to design, manufacture, market and sell consumers a defective product which was inherently flawed and dangerous; and,

c.      Tenpoint's practice of promoting and advertising the quality of Tenpoint's Phantom CLS crossbows to consumers nationwide, including plaintiff and other Illinois consumers, when Tenpoint knew or should have known that the crossbows were defective and would likely result in serious injury to the users

    d.    Tenpoint's practice of marketing and advertising the Phantom CLS crossbow as a top-of-the-line crossbow with premium safety features, when it knew that the so-called safety features were inadequate and the crossbows were unreasonably dangerous to users

    e.    Tenpoint's practice of designing an effective and inexpensive safety feature in the grip guard, to which it holds a patent, but then withholding the grip guard from the market for multiple years and failing to disclose to consumers and users the recommended use of such a grip guard with the Phantom CLS crossbow.

    f.    Tenpoint's practice of profiting from the sale of grip guards to consumers who had previously purchased unsafe crossbows.

47.    The aforementioned misrepresentations and omissions were made in trade or commerce.

48.    As a direct and proximate cause of Tenpoint's aforementioned violations of the Illinois Consumer Fraud Act, plaintiff suffered damages including injury to his left thumb as more specifically described above, resulting in severe and permanent injury to his left thumb, physical impairment and disfigurement, physical pain and suffering, mental pain and suffering, impairment of his enjoyment of life, and incurred and will continue to incur various sums of money for past, present and future medical expenses associated with monitoring and treating his injuries.

WHEREFORE, plaintiff prays that the Court enter judgment in his favor and against Tenpoint in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus his reasonable attorney's fees and costs of suit.  Plaintiff further prays for injunctive relief from the Court consisting of the following:

    A.    Ordering that Tenpoint notify all Illinois consumers of Phantom CLS crossbows about the unreasonably dangerous nature of the crossbow.

    B.    Ordering that Tenpoint provide a grip guard free of charge to all Illinois consumers of Phantom CLS crossbows including plaintiff.

C.      Ordering that Tenpoint cease and desist from selling or distributing any

unreasonably dangerous crossbows in Illinois.

**Count III**
**(Directed Against Tenpoint)**
**(Negligence)**

49.     Plaintiff realleges and reasserts each and every allegation contained in paragraphs

1 – 34 of this Complaint as if fully set forth herein.

50.     This count is brought against Defendant Tenpoint only.

51.     Tenpoint had a duty to the consumers and users of its crossbows such as plaintiff

to sell products that were not unreasonably dangerous.

52.     Tenpoint negligently designed the Phantom CLS crossbow resulting in an

unreasonably dangerous product.  A reasonable manufacturer of crossbows in Tenpoint's

position would have designed the foregrip of the crossbow in such a fashion as to prevent a user

from injuring their fingers or thumbs on the bowstring of the crossbow during normal operation

and use of the crossbow.

53.     Tenpoint should have anticipated, and in fact had knowledge, that their design

would cause users to locate the GripSafety while not looking as they sighted a deer, and permit

the GripSafety to be depressed by any portion of the users hand with their thumb in the path of

the bowstring.

54.     Alternative, safer designs were known to Tenpoint prior to the time that plaintiff

purchased his Phantom CLS crossbow, but Tenpoint negligently chose not to implement those

designs into plaintiff's crossbow.

55.     As a direct and proximate result of Tenpoint's negligence, plaintiff suffered

damages including severe and permanent injury to his left thumb, physical impairment and

disfigurement, physical pain and suffering, mental pain and suffering, impairment of his enjoyment of life, and incurred and will continue to incur various sums of money for past, present and future medical expenses associated with monitoring and treating his injuries.

WHEREFORE, plaintiff prays that the Court enter judgment in his favor and against Tenpoint in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus his costs of suit.

## Count IV
### (Directed Against Tenpoint)
### (Fraudulent Misrepresentation / Omission)

56.     Plaintiff realleges and reasserts each and every allegation contained in paragraphs 1 – 34 of this Complaint as if fully set forth herein.

57.     This count is brought against Defendant Tenpoint only.

58.     Tenpoint fraudulently misrepresented the following material facts to plaintiff relating to the Phantom CLS crossbow purchased by plaintiff:

      a.     That the GripSafety "requires the shooter to hold the fore-grip properly – and safely – below the surface of the flight rail while shooting the crossbow."

      b.     That the GripSafety increases the safety of using the crossbow.

59.     The foregoing representations were false at the time they were made by Tenpoint and Tenpoint knew that they were false with the intent that consumers such as plaintiff rely on those misrepresentations.

60.     Tenpoint fraudulently omitted and/or concealed the following material facts about the Phantom CLS crossbow purchased by plaintiff:

      a.     That the Phantom CLS was defectively designed and unreasonably dangerous;

      b.     That a shooter may still injure their fingers or thumb while using the Phantom CLS crossbow despite the inclusion of the GripSafety on the crossbow.

61.     Plaintiff relied on the above misrepresentations when he purchased the Phantom CLS crossbow and used that crossbow.

62.     If plaintiff had known the material facts misrepresented, omitted or concealed from him by Tenpoint about the Phantom CLS crossbow, plaintiff would not have purchased or used the crossbow.

63.     As a direct and proximate result of Tenpoint's fraudulent misrepresentations and omissions, plaintiff suffered damages including severe and permanent injury to his left thumb, physical impairment and disfigurement, physical pain and suffering, mental pain and suffering, impairment of his enjoyment of life, and incurred and will continue to incur various sums of money for past, present and future medical expenses associated with monitoring and treating his injuries.

WHEREFORE, plaintiff prays that the Court enter judgment in his favor and against Tenpoint in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus his costs of suit.

### Count V
### (Directed Against Tenpoint)
### (Negligent Misrepresentation)

64.     Plaintiff realleges and reasserts each and every allegation contained in paragraphs 1 – 34 of this Complaint as if fully set forth herein.

65.     This count is brought against Defendant Tenpoint only.

66.     Tenpoint had a duty to provide truthful, accurate, useful, appropriate and complete information and warnings in its advertising and marketing of the Phantom CLS crossbow and with the literature that accompanied the Phantom CLS crossbow.

67.     Tenpoint negligently misrepresented the following material facts to plaintiff relating to the Phantom CLS crossbow purchased by plaintiff:

    a.     That the GripSafety "requires the shooter to hold the fore-grip properly – and safely – below the surface of the flight rail while shooting the crossbow."

    b.     That the GripSafety increases the safety of using the crossbow.

68.     The foregoing representations were false at the time they were made by Tenpoint and Tenpoint knew or should have known that they were false.

69.     Tenpoint negligently omitted the following material facts about the Phantom CLS crossbow purchased by plaintiff:

    a.     That the Phantom CLS was defectively designed and unreasonably dangerous;

    b.     That a shooter may still injure their fingers or thumb while using the Phantom CLS crossbow despite the inclusion of the GripSafety on the crossbow.

70.     Plaintiff relied on the above misrepresentations when he purchased the Phantom CLS crossbow and used that crossbow.

71.     If plaintiff had known the material facts misrepresented or omitted from him by Tenpoint about the Phantom CLS crossbow, plaintiff would not have purchased or used the crossbow.

72.     As a direct and proximate result of Tenpoint's negligent misrepresentations and omissions, plaintiff suffered damages including severe and permanent injury to his left thumb, physical impairment and disfigurement, physical pain and suffering, mental pain and suffering, impairment of his enjoyment of life, and incurred and will continue to incur various sums of money for past, present and future medical expenses associated with monitoring and treating his injuries.

WHEREFORE, plaintiff prays that the Court enter judgment in his favor and against

Tenpoint in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus his costs of suit.

## Count VI
### (Directed Against Tenpoint)
### (Breach of Implied Warranty of Merchantability)

73.     Plaintiff realleges and reasserts each and every allegation contained in paragraphs

1 – 34 of this Complaint as if fully set forth herein.

74.     This Count is brought against Defendant Tenpoint only.

75.     By virtue of § 2-314 of the Uniform Commercial Code (810 ILCS 5/2-314),

Tenpoint impliedly warranted that the Phantom CLS crossbow sold to plaintiff was

merchantable.

76.     As a seller and manufacturer of Phantom CLS crossbows, Tenpoint is a

"merchant," within the meaning of § 2-314.

77.     Implied in the sale of the Phantom CLS crossbow is a warranty of merchantability

that requires, among other things, that the crossbow pass without objection in the trade and is fit

for the ordinary purposes for which the crossbow is used.

78.     Because the Phantom CLS crossbow is defectively designed, as described above,

and unreasonably dangerous, the crossbow is not able to function in its ordinary capacity and,

therefore, is not merchantable, as impliedly warranted by Tenpoint.

79.     Plaintiff provided Tenpoint with notice of the defect in his Phantom CLS

crossbow by sending Tenpoint a letter on December 5, 2011.

80.     As a direct and proximate result of the breach of the implied warranty of

merchantability, plaintiff suffered damages including severe and permanent injury to his left

thumb, physical impairment and disfigurement, physical pain and suffering, mental pain and

suffering, impairment of his enjoyment of life, and incurred and will continue to incur various

sums of money for past, present and future medical expenses associated with monitoring and

treating his injuries.

WHEREFORE, plaintiff prays that the Court enter judgment in his favor and against

Tenpoint in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus his costs of suit.


### Count VII
### (Directed Against Tenpoint)
### Willful and Wanton Conduct

81.     Plaintiff realleges and reasserts each and every allegation contained in all of the

preceding paragraphs of this Complaint as if fully set forth herein.

82.     This Count is brought against Defendant Tenpoint only.

83.     Despite Tenpoint's direct knowledge of numerous users of its crossbows

receiving virtually identical injuries to their thumbs while using Tenpoint's crossbows, Tenpoint

intentionally decided to withhold effective and inexpensive design changes that would have

prevented most, if not all, of these injuries (including plaintiff's injury) in reckless and callous

disregard of the harm caused to such users such as plaintiff.

84.     In the face of an overwhelming number of user reports about serious and

permanent thumb injuries including amputations, Tenpoint refused to remedy the situation, even

though it had the capability to implement an effective and inexpensive design change,

particularly when compared to the gravity of harm posed by such crossbow injuries.

85.     Tenpoint willfully placed crossbows such as the Phantom CLS into the stream of

commerce knowing that those crossbows were unreasonably dangerous.

12-L-_____                                                     Page 15 of 24

86.    As a direct and proximate result of the willful and wanton conduct of Tenpoint, plaintiff suffered damages including severe and permanent injury to his left thumb, physical impairment and disfigurement, physical pain and suffering, mental pain and suffering, impairment of his enjoyment of life, and incurred and will continue to incur various sums of money for past, present and future medical expenses associated with monitoring and treating his injuries.

WHEREFORE, plaintiff prays that the Court enter judgment in his favor and against Tenpoint in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus his costs of suit.

### Count VIII
### (Directed Against Cabela's)
### (Strict Products Liability – Defective Design)

87.    Plaintiff realleges and reasserts each and every allegation contained in paragraphs 1 – 34 of this Complaint as if fully set forth herein.

88.    This Count is brought against Defendant Cabela's only.

89.    During all relevant times hereto, Cabela's was engaged in the sale of Phantom CLS crossbows.

90.    As described above, the design of the Phantom CLS crossbow that included a GripSafety without a grip guard made the crossbow unreasonably dangerous.

91.    Said defective design existed at the time the Phantom CLS crossbow left Cabela's control.

92.    As a direct and proximate result of the defective design of the Phantom CLS crossbow, plaintiff suffered damages including severe and permanent injury to his left thumb, physical impairment and disfigurement, physical pain and suffering, mental pain and suffering,

impairment of his enjoyment of life, and incurred and will continue to incur various sums of money for past, present and future medical expenses associated with monitoring and treating his injuries.

WHEREFORE, plaintiff prays that the Court enter judgment in his favor and against Cabela's in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus costs of suit.

## Count IX
### (Directed Against Cabela's)
### (Illinois Consumer Fraud Act)

93.     Plaintiff realleges and reasserts each and every allegation contained in paragraphs 1 – 34 of this Complaint as if fully set forth herein.

94.     This Count is brought against Defendant Cabela's only.

95.     Cabela's's conduct was unfair and deceptive and constituted an improper concealment, suppression, misrepresentation or omission of a material fact in violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2.

96.     Cabela's violated the Illinois Consumer Fraud Act's prohibition against misrepresentation of a material fact during commercial transactions because of conduct including but not limited to:

  a.     Misrepresenting that the inclusion of the GripSafety on the Phantom CLS crossbow made the crossbow safer to operate than other crossbows without the GripSafety.

  b.     Misrepresenting that the GripSafety increases the safety of using the Phantom CLS crossbow.

  c.     Misrepresenting that the Phantom CLS crossbow was the safest crossbow that plaintiff could buy.

  d.     Misrepresenting that the Phantom CLS crossbow was the best crossbow that plaintiff could buy.

97.     Cabela's violated the Illinois Consumer Fraud Act's prohibition against omitting

material information during commercial transactions because of conduct including but not

limited to:

      a.      Cabela's omission of material facts regarding the poor and dangerous
design of the Phantom CLS crossbow.

      b.      Cabela's omission of the material fact that a user may still injure their
fingers or thumb while using the Phantom CLS crossbow despite the
inclusion of the GripSafety on the crossbow.

98.     Cabela's violated the Illinois Consumer Fraud Act's prohibition against unfair

practices because of conduct including but not limited to:

      a.      Cabela's practice of selling a product that it knew or should have known
had a dangerous defect into the stream of commerce with the intent that
consumers would purchase it and use it;

      b.      Cabela's practice of promoting the Phantom CLS crossbow as a top-of-
the-line crossbow with premium safety features, when it knew that the so-
called safety features were inadequate and the crossbows were
unreasonably dangerous to users;

99.     The aforementioned misrepresentations and omissions were made in trade or

commerce.

100.    As a direct and proximate result of Cabela's aforementioned violations of the

Illinois Consumer Fraud Act, plaintiff suffered damages including injury to his left thumb as

more specifically described above, resulting in severe and permanent injury to his left thumb,

physical impairment and disfigurement, physical pain and suffering, mental pain and suffering,

impairment of his enjoyment of life, and incurred and will continue to incur various sums of

money for past, present and future medical expenses associated with monitoring and treating his

injuries.

WHEREFORE, plaintiff prays that the Court enter judgment in his favor and against Tenpoint in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus his reasonable attorney's fees and costs of suit.

## Count X
### (Directed Against Cabela's)
### (Negligent Misrepresentation)

101.   Plaintiff realleges and reasserts each and every allegation contained in paragraphs 1 – 34 of this Complaint as if fully set forth herein.

102.   This count is brought against Defendant Cabela's only.

103.   Cabela's had a duty to provide truthful, accurate, useful, appropriate and complete information and warnings with regard to the products it sells to consumers such as the Phantom CLS crossbow.

104.   Cabela's negligently misrepresented the following material facts to plaintiff relating to the Phantom CLS crossbow purchased by plaintiff:

   a.   That the inclusion of the GripSafety on the Phantom CLS crossbow made the crossbow safer to operate than other crossbows without the GripSafety.

   b.   That the GripSafety increases the safety of using the crossbow.

   c.   That the Phantom CLS crossbow was the safest crossbow that plaintiff could buy

   d.   That the Phantom CLS crossbow was the best crossbow that plaintiff could buy.

105.   The foregoing representations were false at the time they were made by Cabela's and Cabela's knew or should have known that they were false.

106.   Cabela's negligently omitted the following material facts about the Phantom CLS crossbow purchased by plaintiff:

    a.    That the Phantom CLS was defectively designed and unreasonably dangerous;

    b.    That a shooter may still injure their fingers or thumb while using the Phantom CLS crossbow despite the inclusion of the GripSafety on the crossbow.

107.    Plaintiff relied on the above misrepresentations when he purchased the Phantom CLS crossbow and used that crossbow.

108.    If plaintiff had known the material facts misrepresented or omitted from him by Cabela's about the Phantom CLS crossbow, plaintiff would not have purchased or used the crossbow.

109.    As a direct and proximate result of Cabela's negligent misrepresentations and omissions, plaintiff suffered damages including severe and permanent injury to his left thumb, physical impairment and disfigurement, physical pain and suffering, mental pain and suffering, impairment of his enjoyment of life, and incurred and will continue to incur various sums of money for past, present and future medical expenses associated with monitoring and treating his injuries.

WHEREFORE, plaintiff prays that the Court enter judgment in his favor and against Cabela's in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus his costs of suit.

## Count XI
### (Directed Against Cabela's)
### (Breach of Implied Warranty of Merchantability)

110.    Plaintiff realleges and reasserts each and every allegation contained in paragraphs 1 – 34 of this Complaint as if fully set forth herein.

111.    This Count is brought against Defendant Cabela's only.

112.    By virtue of § 2-314 of the Uniform Commercial Code (810 ILCS 5/2-314), Cabela's impliedly warranted that the Phantom CLS crossbow sold to plaintiff was merchantable.

113.    As a seller of Phantom CLS crossbows, Cabela's is a "merchant," within the meaning of § 2-314.

114.    Implied in the sale of the Phantom CLS crossbow is a warranty of merchantability that requires, among other things, that the crossbow pass without objection in the trade and is fit for the ordinary purposes for which the crossbow is used.

115.    Because the Phantom CLS crossbow is defectively designed, as described above, and unreasonably dangerous, the crossbow is not able to function in its ordinary capacity and, therefore, is not merchantable, as impliedly warranted by Cabela's.

116.    Plaintiff hereby provides Cabela's with notice of the defect in his Phantom CLS crossbow by the filing of this Complaint.

117.    As a direct and proximate result of the breach of the implied warranty of merchantability, plaintiff suffered damages including severe and permanent injury to his left thumb, physical impairment and disfigurement, physical pain and suffering, mental pain and suffering, impairment of his enjoyment of life, and incurred and will continue to incur various sums of money for past, present and future medical expenses associated with monitoring and treating his injuries.

WHEREFORE, plaintiff prays that the Court enter judgment in his favor and against Tenpoint in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus his costs of suit.

### Count XII
### (Directed Against Cabela's)
### (Breach of Implied Warranty of Fitness for a Particular Purpose)

118.    Plaintiff realleges and reasserts each and every allegation contained in paragraphs 1 – 34 of this Complaint as if fully set forth herein.

119.    This Count is brought against Defendant Cabela's only.

120.    Phantom CLS crossbows are "goods" within the meaning of 810 ILCS 5/2-105.

121.    Cabela's is a "seller" within the meaning of 810 ILCS 5/2-315.

122.    At the time that plaintiff purchased his Phantom CLS crossbow, he made known to Cabela's that he needed a crossbow for the particular purpose of deer hunting.

123.    Plaintiff relied on Cabela's skill and judgment to select the Phantom CLS crossbow.

124.    Pursuant to 810 ILCS 5/2-315, Cabela's impliedly warranted that the Phantom CLS crossbow was suitable for the purpose of safely hunting deer.

125.    Because the Phantom CLS crossbow is defectively designed, as described above, and unreasonably dangerous, Cabela's breached its implied warranty that the Phantom CLS crossbow was suitable for the particular purpose of safely hunting deer.

126.    Plaintiff hereby provides Cabela's with notice of the defect in his Phantom CLS crossbow by the filing of this Complaint.

127.    As a direct and proximate result of the breach of the implied warranty of fitness for a particular purpose, plaintiff suffered damages including severe and permanent injury to his left thumb, physical impairment and disfigurement, physical pain and suffering, mental pain and suffering, impairment of his enjoyment of life, and incurred and will continue to incur various

sums of money for past, present and future medical expenses associated with monitoring and treating his injuries.

WHEREFORE, plaintiff prays that the Court enter judgment in his favor and against Tenpoint in an amount in excess of Fifty Thousand Dollars ($50,000.00), plus his costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury of twelve as to all counts and all issues so triable.

HEPLERBROOM LLC

By:_____

Jeffrey S. Hebrank,  #06182800
W. Jason Rankin,  #06237927
Jason D. Johnson,  #6286499
130 N. Main St.
Edwardsville, Illinois 62025
Phone: (618) 656-0184
Fax:  (618) 656-1364

*Attorneys for Plaintiff*



IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

CLERK OF CIRCUIT COURT #6
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

CYRIL B. KORTE,                          )
                                         )
            Plaintiff,                   )
                                         )
vs.                                      )        Case No. 12-L-___739___
                                         )
HUNTER'S MANUFACTURING                   )
COMPANY, INC. d/b/a TENPOINT             )
CROSSBOW TECHNOLOGIES and                )
CABELA'S RETAIL MO, LLC,                 )
                                         )
            Defendants.                  )

## AFFIDAVIT AS TO DAMAGES SOUGHT

I, Jason D. Johnson, of HeplerBroom LLC, attorney for Plaintiff in the above-entitled

case, on oath state that the total of money damages sought in this Complaint against the

Defendants Hunter's Manufacturing Company, Inc. d/b/a Tenpoint Crossbow Technologies and

Cabela's Retail MO, LLC exceeds FIFTY THOUSAND DOLLARS ($50,000.00).

DATED this 25 day of ___May___, 2012.

_____
Jason D. Johnson

SUBSCRIBED AND SWORN TO before me, a Notary Public, this 25 day of

___May___, 2012.

_____
Notary Public

My Commission Expires:

OFFICIAL SEAL
LYNN M. HENKHAUS
NOTARY PUBLIC — STATE OF ILLINOIS
MY COMMISSION EXPIRES JAN. 28, 2016

12-L-_____

Page 24 of 24

FILED

MAY 2 5 2012

CLERK OF CIRCUIT COURT #7
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

IN THE CIRCUIT COURT
THIRD JUDICIAL CIRCUIT
MADISON COUNTY, ILLINOIS

CYRIL B. KORTE,                          )
                                         )
         Plaintiff,                      )
                                         )
vs.                                      )        Case No. 12-L-_739_
                                         )
HUNTER'S MANUFACTURING                   )
COMPANY, INC. d/b/a TENPOINT             )        **JURY TRIAL DEMANDED**
CROSSBOW TECHNOLOGIES and                )
CABELA'S RETAIL MO, LLC,                 )
                                         )
         Defendants.                     )

## ENTRY OF APPEARANCE

Comes now JASON D. JOHNSON of HeplerBroom LLC and enters his appearance as

counsel for the plaintiff herein.

HEPLERBROOM LLC

By: _____
    Jeffrey S. Hebrank,  #06182800
    W. Jason Rankin,  #06237927
    Jason D. Johnson,  #6286499
    130 N. Main St.
    Edwardsville, Illinois 62025
    Phone: (618) 656-0184
    Fax:  (618) 656-1364

    *Attorneys for Plaintiff*